## SULLIVAN v. McMANUS et al.

(Supreme Court. Appellate Division, First Department. June 11, 1897.)

1. NUISANCE—LIABILITY OF MASTER.

The proprietors of a livery stable who contracted to care for a wagon, which their employé, without their personal knowledge, directed the owner's driver to leave in a public highway, are liable for the injuries sustained resulting from a collision therewith, since they are participants in the maintenance of a public nuisance.

2. SAME.

Where suit is brought to recover for damages resulting from the maintenance of a public nuisance, it is proper to refuse to charge that the plaintiff cannot recover unless defendants violated some statute or ordinance, or kept the place in an unlawful or improper manner.

3. TRIAL—INSTRUCTIONS.

Where there is a request for an instruction, it is not improper for the court to ask the counsel for the adverse party as to his view of the propriety of such instruction.

Appeal from trial term, New York county.

Action by Maurice Sullivan, as administrator of the goods, chattels, and credits of Mary Sullivan, deceased, against Owen B. McManus and others, for damages. McManus and Horan appeal from judgment against them. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, INGRAHAM, and PARKER, JJ.

Christopher Fine, for appellants.
Thomas P. Wickes, for respondent.

INGRAHAM, J. The liability of the defendants is based, not upon negligence, but upon the fact that they were concerned in the

maintenance of a public nuisance. Once established that a nuisance has been created, all those who participate in creating or maintaining the nuisance are liable for any damages sustained; and, to entitle the plaintiff to recover in this action, it is only necessary to show that the defendants in some way were parties in the creation or maintenance of a public nuisance. It is well settled in this state that the storing of a wagon in a highway is such a nuisance.

As was said by Peckham, J., in the case of Cohen v. Mayor, etc., 113 N. Y. 535, 21 N. E. 701:

"The storing of the wagon in the highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose, under temporary exceptions as to deposits for building purposes, and to load and unload wagons, and receive and take away property for or in the interest of the owner of the adjoining premises, which it is not now necessary to more specifically enumerate. * * * The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets."

The case also is a controlling authority for the rule that any one who participates in the erection or continuance of the nuisance is responsible. It is there held that the city of New York was responsible because of the fact that it had issued a license to the owner of the wagon to leave it in the street, when such license was unauthorized by law, the court saying (at page 537, 113 N. Y., and page 702, 21 N. E.):

"In this case it not only acquiesced in such use, but it actually encouraged it by making out and delivering a license to do it, and it received directly and immediately from the owner of the wagon a compensation for the erection and maintenance of a nuisance, under the authority of such license. Under such circumstances the defendant must be held liable the same as if it had itself maintained the nuisance, for the owner of the wagon was nothing more than an agent, through whom the defendant did this unlawful act."

See, also, Farley v. Mayor, etc., 152 N. Y. 227, 46 N. E. 506.

It is not disputed but that a wagon was thus left unattended in a public highway, and that, in consequence of such wagon being left there, the plaintiff's intestate received the injuries from which she died; and the only question for us to determine is as to the participation of the defendants in the erection and continuance of the nuisance. We think that the evidence was clearly sufficient to sustain the verdict of the jury as to such participation on the part of the defendants. The wagon belonged to the firm of Saltau & Baker, who were dealers in produce, and they, in their business, required the use of this wagon at an early hour in the morning. Their driver was furnished with a key to the stable, and he was in the habit of going to the stable at 2 or 3 o'clock in the morning, taking the wagon, doing the business which was required, and returning to the stable some time between 5 and 9 o'clock. There is evidence that on several occasions prior to the death of the plaintiff's intestate, instead of taking the wagon into the stable upon his return, he, under the direction of the person in charge of the defendants' stable at the time, left the wagon standing in the street,

having unharnessed the horse from the wagon, and taken the horse into the stable. The driver of this wagon testified that, on the morning in question, he arrived at the stable, and took the wagon away, between 2 and 3 o'clock, and returned to the stable at about half past 5 o'clock; that, when he arrived there, a man in the employ of the defendant, who was in the building, and who was the only person that he saw there, told him to unharness his horse, and leave the wagon in the street. Acting under this instruction, he did unhitch the horse from the wagon, took the horse into the stable, and delivered it to the man from whom he received the instructions, leaving the wagon in the street. Between an hour and an hour and a half after this wagon was so left in the street, the plaintiff's intestate, while walking along the street, was struck by the shafts of this wagon, they having in the meantime been tied up with a string, and having fallen down just as plaintiff's intestate was passing, in consequence of another wagon running into the wagon thus left in the street; and the plaintiff was thereby injured, from the result of which injuries she died. There was also evidence tending to show that wagons or vehicles had been left by the proprietors of this livery stable, or their employés, at other times in the street, and that such acts of the defendants were not of infrequent occurrence. It also appears that one Kelly, who was the foreman of the defendants, and in charge of the stable, arrived at the stable on the morning in question, at half past 5 o'clock, which was some time before the wagon that caused the injury arrived there. He was thus in the stable at the time that the wagon was brought there, and left in the street by order of an employé of the defendants. Under the contract made by the defendants with the owners of the wagon, it was the defendants' duty to take care of the wagon left with them. Thus, there was evidence that the wagon which the defendants had contracted to care for was left under the direction of an employé of the defendants in the street at half past 5 o'clock in the morning, and that it remained in that condition until a quarter before 7, without being taken into the stable or otherwise cared for; the evidence being that the two persons in the stable at that time were the man called John, who was a washer, and who slept in the place at night, and Kelly, who was the foreman.

These defendants, being thus responsible for the driver's leaving this wagon in the street at the time, were also responsible for allowing it to remain in the street for such a length of time after they had noticed that it was there. From the evidence, the jury would be justified in finding that at least the washer, who was the one apparently in charge of the stable, had notice of the fact that this wagon was left in front of the building when the horse was delivered to him; and these defendants' employés, in whose custody the wagon was thus left, certainly participated in the act of allowing it to remain in the street, and thus in maintaining the nuisance. The jury have found a verdict in favor of the owners of the wagon. From that verdict the plaintiff has not appealed. We are not interested, therefore, in the question as to whether or not the owners of the wagon were relieved by the act of their employé in leav-

ing this wagon unattended in the street. The question that we have to determine is whether or not these appellants, against whom the jury have rendered their verdict, participated in the creation or maintenance of this nuisance, so as to render them responsible for the damage which it has caused. It was no defense to say that they had no personal knowledge of the particular instructions given to the driver by their employé on the morning in question. He was employed by them to attend at the stable. He and the foreman were in charge of the stable at the time the wagon was left there. They were the ones to whom a person coming with a wagon to be placed in the stable at that time was required to deliver it; and it could not be doubted that had either of them put this wagon into the street, in discharge of their duty as the persons in charge of this stable at that time, the defendants would have been liable. And so, when this driver came to the stable with the wagon, it was the duty of the men to receive the wagon, and store it upon the premises. Instead of doing so, one of them directed the driver to leave the wagon in the street, and that the driver did. It seems to us that this act was directly within the authority conferred upon the men when in charge of the stable to take care of the horses and wagons left with the proprietors of the stable for safe-keeping, and this wagon having been thus unlawfully stored in the street, under direction given by one acting in the discharge of his duty in the custody of the stable at the time, the proprietors of the stable were responsible. If the driver had driven this wagon into the stable, and the stable man in charge had put it back upon the street, there would be no doubt of the participation of the defendants in the erection and continuance of the nuisance. The substance of what this stable man did was just that. He directed the driver, who arrived at the stable with a wagon which the appellants were under contract to care for, to store it in the street, and not to bring it into the stable. That was a direct participation of this man, acting in the discharge of the duty intrusted to him as custodian of the stable, in the erection and maintenance of a nuisance in the street; and, for any damages caused by such nuisance, all of those who participated in its erection are responsible.

There are many exceptions to testimony, and to the charge of the court upon the trial, which we do not consider as presenting cause for a reversal. Upon the view that we take of the question presented in this case, most of the objections to evidence, and requests to charge which were refused, were entirely immaterial. Some of the objections to testimony are so frivolous that it is somewhat remarkable that they should have been taken. Such frivolous objections, which so largely increase the size of the record, and impose upon the court so much additional labor, should in some way be discountenanced. Thus, when counsel for the plaintiff asked to have a string marked for identification, counsel for the defendants objected as immaterial and irrelevant; and, that objection being overruled, an exception was taken. Thus, the mere identification of an article produced by a witness is made the subject of serious objection and exception. If counsel taking such objection failed to

have the more serious ones properly examined, they could hardly complain.

The charge of the court seems to have been fully as favorable to the defendants as they could have required. Most of their requests to charge were charged, and, at the request of the defendants, the court expressly charged that "damages could not be recovered from the defendants unless they maintained, at the time the accident happened, this wagon in front of the street, and it was a nuisance,—a public nuisance,—and they had no right to have it there." Counsel for the defendants then said, "Unless the jury find it was a public nuisance." The court replied, "Yes; can't recover against them, regardless of breach of public duty. Is that what you mean?" Counsel then said what he meant: "I say, unless the jury can find from the evidence that they violated some statute or some ordinance, or kept the place in an unlawful or improper manner, the plaintiff cannot recover against them." That, the court correctly refused to charge. Counsel also indulges in some criticism of the court, because he asked the counsel for the plaintiff whether he had any objection to the court's charging some of the defendants' requests. When requests are presented to the court which evidently are so drawn as to present different phases of the question submitted to the jury, so that upon them exceptions can be taken which may be valuable upon appeal, it is certainly not improper for the court to ask the counsel for the adverse party as to his view of the propriety of such requests; and, while a refusal to charge the requests after such discussion with the counsel is subject to an exception and review, the fact that the court had asked the counsel for the adverse party for his views upon the propriety of the requests is certainly not an error that can be complained of. A consideration of the whole charge, including those requests of the defendant which were acceded to by the court, I think establishes that the law was charged fully as favorable to these defendants as was justified by the facts presented, and that the verdict of the jury was amply sustained by the evidence.

The judgment was right, and is affirmed, with costs. All concur.